AO 93C (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means      ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched or identify the person by name and address)* )<br>205 W. FAIRVIEW BLVD.<br>INGLEWOOD, CA 90302 )<br>)<br>)<br>)<br>)<br>) | Case No. 2:21-MJ-03562 |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Central District of California *(identify the person or describe the property to be searched and give its location)*:

   *See Attachment A*

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

   *See Attachment B*

Such affidavit(s) or testimony are incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before <u>14 days from the date of its issuance</u> *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to <u>the U.S. Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.</u>

☐ Pursuant to <u>18 U.S.C. § 3103a(b)</u>, I find that immediate notification may have an adverse result listed in <u>18 U.S.C. § 2705</u> (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _8/2/21; 3:01pm_   *John E. McDermott*
                                         *Judge's signature*

City and state: _Los Angeles, CA_    _Hon. John E. McDermott, U.S. Magistrate Judge_
                                       *Printed name and title*

AUSA Andrew Brown, x0102, 11th Floor

AO 93C  (Rev. 8/18) Warrant by Telephone of Other Reliable Electronic Means (Page 2)

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| 2:21-MJ-03562 | August 5, 2021 0630 hrs | Stanley Hudson |

Inventory made in the presence of :
    Julie Taing

Inventory of the property taken and name of any person(s) seized:

    See attached search warrant inventory

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 08/30/2021

_Executing officer's signature_

Lyndon Versoza, US Postal Inspector

_Printed name and title_

# THE UNITED STATES POSTAL INSPECTION SERVICE
## SEARCH WARRANT INVENTORY

Position/Box.: _____ / _____

Subject Name: STANLEY HUDSON          Date: 8/5/2021
Subject Address: 2015 W. FAIRVIEW BLVD, INGLEWOOD   Floor/Room No. _____
Inspector(s): TAING                    Case No. _____

Safe: _____   Cabinet: _____   Credenza: _____   Desk: _____   Drawer: _____
Shelf: _____   Table: _____   Wall: _____   Other: _____

| QUANTITY | DESCRIPTION OF ITEMS | |
|---|---|---|
| A00312420 | SHEET OF WHITE COMPUTER PAPER W/ HANDWRITTEN WORDS | ✓ |
| A00312434 | SAVINGS BOND REDEMPTION REPORT & CHASE RECEIPT | ✓ |
| A00312428 | CRYPTO SEEDS, TAX DOCUMENTS | ✓ |
| A00312427 | DOCS CONTAINING RECOVERY PHRASE & INSTRUMENTS | ✓ |
| A00335714 | CRYPTO RECOVERY DOCS | ✓ |
| A00312425 | CRYPTO ADDRESS/KEY | ✓ |
| A00312424 | COMPOSITION NOTEBOOK CONTAINING PASS CODES | ✓ |
| A00312426 | INCOME TAX DOCUMENTS | ✓ |
| A00335710 | NOTEBOOK W/ COPIES OF US SAVINGS BOND + BANK DOCS | ✓ |
| A00335711 | US currency | ✓ |
| A01556927 | US currency | ✓ |
| A00312432 | US currency | ✓ |
| A00312419 | US currency | ✓ |
| A01556929 | BITCOIN PAPER WALLETS | ✓ |
| A01556931 | MULTIPLE CREDIT CARDS | ✓ |
| A00312423 | HARDWARE WALLETS | ✓ |
| A01556930 | US currency | ✓ |
| A00335709 | US currency | ✓ |

DISTRIBUTION OF COPIES:   White- U.S. Magistrate (Return with Warrant)
                         Yellow- Inspector (Attach to PS Form 714)
                         Pink- Subject Searched

# THE UNITED STATES POSTAL INSPECTION SERVICE

## SEARCH WARRANT INVENTORY

Position/Box.: _____/_____

Subject Name: STANLEY HUDSON    Date: 8/5/2021

Subject Address: 205 W. FAIRVIEW BLVD, INGLEWOOD    Floor/Room No. _____

Inspector(s): TAING    Case No. 2305135 - AML

Safe: _____ Cabinet: _____ Credenza: _____ Desk: _____ Drawer: _____

Shelf: _____ Table: _____ Wall: _____ Other: _____

| QUANTITY | DESCRIPTION OF ITEMS | |
|---|---|---|
| A00312433 | 2 USB FLASH DRIVES ON UCLA LANYARD KEYCHAIN | ✓ |
| A00312422 | SILVER APPLE LAPTOP MODEL # A1466, SN # C02VP9HYJ1WK | ✓ |
| A00335713 | BLACK VERIZON BLACKBERRY | ✓ |
| A00312421 | WHITE/GOLD IPHONE S MODEL A1687, FCC ID BCG-E2944A | ✓ |
| A00335715 | AT&T PHONE - MAROON IN COLOR | ✓ |
| A00312430 | APPLE COMPUTER S/N # C02P356YFYOT | ✓ |
| A00312429 | APPLE COMPUTER S/N # C02P6OKJF26C | ✓ |
| A00335712 | SILVER CANON POWERSHOT CAMERA SD790 + GREEN CASE | ✓ |

DISTRIBUTION OF COPIES:   White-*U.S. Magistrate (Return with Warrant)*
Yellow-*Inspector (Attach to PS Form 714)*
Pink-*Subject Searched*
Green-*Evidence Control Officer (Attach to PS Form 714)*

Page 2 of 2 pages

PS Form 8164, October 1993

**ATTACHMENT A**

**PREMISES TO BE SEARCHED**

The premises to be searched is:

205 W FAIRVIEW BLVD., INGLEWOOD, CA 90302 (the HUDSON PREMISES). The HUDSON PREMISES is a single-story, single-family dwelling located on the northern side of West Fairview Boulevard, just west of North Eucalyptus Avenue in Inglewood, California.  On the curb in front of the house are the numbers "205" painted in black.  The façade of the house has tan-colored wooden or wood-like slats with white window trim and a brick chimney. The roof appears to be tan colored asphalt and has two white-colored gable dormers.  Surrounding the front yard of the property is wrought iron and stucco fencing.  The fence bounds the property on the left and right and extends to the rear of the lot, but becomes solid beyond the front yard.  The driveway is protected by a security gate and leads back to a garage that appears to have been extended.  The premises to be searched includes the entire lot, the structures on it, and any vehicles on the premises owned or controlled by Stanley Hudson.

**ATTACHMENT B**

**I.   ITEMS TO BE SEIZED**

1.   The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. §§ 402 (contempt), 1344, 1349 (bank fraud conspiracy), and 1956 (money laundering), 21 U.S.C. §§ 841 and 846 (drug trafficking), and 26 U.S.C. § 7201 (tax evasion) (the "Target Offenses"), namely:

   a.   Controlled substances, precursor chemicals, and related items and paraphernalia such as cutting and packaging material, scales, pay-owe sheets, and documents and records referring or relating to the same, including those that are opaque as to units (e.g., "I need ten right now").

   b.   Firearms and related items such as ammunition and holsters, money counters, and documents referring or relating to the same;

   c.   Documents and records referring or relating to law enforcement or bank investigations, accounts being frozen or closed or at risk of the same, currency transaction reports, and manipulating transaction amounts to avoid scrutiny;

   d.   Records, programs, and items relating to the counterfeiting or manipulation of documents and identifications, such as the cutting-and-pasting of signatures, letterheads, watermarks, and seals, including the altered or counterfeited information itself.

   e.   Documents and records referring or relating to cash transactions totaling over $10,000 or the purchase of more than $3,000 of postal money orders in a two-week period, or conducting multiple cash ATM transactions or purchasing multiple postal money orders on the same day;

      f.    Documents and records referring or relating to having one person conduct financial transactions on behalf of a different person, or which purport to show a person-to-person loan or payment on such a loan of at least $1,000;

      g.    Mail matter and shipping packages, opened or unopened, not addressed to or from 205 W FAIRVIEW BLVD., INGLEWOOD;

      h.    Personal identifying information of individuals other than those residing at 205 W FAIRVIEW BLVD., INGLEWOOD, including social security numbers, other identifying numbers, dates of birth, credit, debit card, or other account information, PINs, credit reports, and bank or other financial institution information, and records referring or relating to such information;

      i.    Records relating to wealth and the movement of wealth since 2009, such as tax returns and forms, crypto-currency accounts and transfers, other digital wealth storage and transfer methods including PayPal and Venmo, money orders, brokerage and financial institution statements, wire transfers, currency exchanges, deposit slips, cashier's checks, transactions involving prepaid cards, and/or other financial documents related to depository bank accounts, lines of credit, credit card accounts, real estate mortgage initial purchase loans or loan refinances, residential property leases, escrow accounts, the purchase, sale, or leasing of automobiles or real estate, or auto loans, and investments, or showing or referring to purchases or transactions for more than $1,000;

      j.    Records or items containing indicia of occupancy, residency or ownership of any location or vehicle being searched, such as keys, rental agreements, leases, utility bills, identity documents, cancelled mail, and surveillance video;

    k.  Currency, money orders, and casino chips with a value in excess of $1,000, including the first $1,000 if more than $1,000 is found, precious metal coins and bullion, and prepaid debit or credit cards;

    l.  Cryptocurrency and related records and items, such as those referring or relating to public or private keys or addresses, or cryptocurrency wallets or their parts, including "recovery seeds" or "root keys" which may be used to regenerate a wallet.  Seizure of the cryptocurrency and wallets will be accomplished by transferring or copying them to a public cryptocurrency address controlled by the United States, or by restoring them onto computers controlled by the United States.

    m.  Documents and keys relating to public storage units, rental cars, prepaid cellular telephones, safety deposit boxes, Commercial Mail Receiving Agencies, virtual offices, or receiving mail at someone else's address, or holding or renting assets or items under someone else's name;

    n.  Documents and records showing electronic and telephone contacts and numbers called or calling, such as SIM cards, address books, call histories, telephone bills, and ICQ, Telegram, and email addresses;

    o.  Any digital device which is itself or which contains evidence, contraband, fruits, or instrumentalities of the TARGET OFFENSES, and forensic copies thereof.

  2.  With respect to any digital device containing evidence falling within the scope of the foregoing categories of items to be seized:

3

      a.   evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

      b.   evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

      c.   evidence of the attachment of other devices;

      d.   evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

      e.   evidence of the times the device was used;

      f.   passwords, encryption keys, biometric keys, and other access devices that may be necessary to access the device;

      g.   applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

      h.   records of or information about Internet Protocol addresses used by the device;

      i.   records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

3. As used herein, the terms "records," "documents," "programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

4. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; gaming consoles (including Sony PlayStations and Microsoft Xboxes); peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

## II. SEARCH PROCEDURE FOR DIGITAL DEVICES

5. In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

    a. Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) and/or forensic image(s) thereof to an appropriate law enforcement laboratory or similar facility to be searched at that location. The search team shall complete the search

as soon as is practicable but not to exceed 120 days from the date of execution of the warrant. The government will not search the digital device(s) and/or forensic image(s) thereof beyond this 120-day period without obtaining an extension of time order from the Court.

   b. The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

    i. The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized. The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

    ii. The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

    iii. The search team may use forensic examination and searching tools, such as "EnCase" and "FTK" (Forensic Tool Kit), which tools may use hashing and other sophisticated techniques.

   c. If the search team, while searching a digital device, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team will not search for similar evidence outside the scope of the items to be seized without first obtaining authority to do so.

   d. If the search determines that a digital device does not contain any data falling within the list of items to be seized,

1 the government will, as soon as is practicable, return the device and
2 delete or destroy all forensic copies thereof.
3       e. If the search determines that a digital device does
4 contain data falling within the list of items to be seized, the
5 government may make and retain copies of such data, and may access
6 such data at any time.
7       f. If the search determines that a digital device is (1)
8 itself an item to be seized and/or (2) contains data falling within
9 the list of other items to be seized, the government may retain the
10 digital device and any forensic copies of the digital device, but may
11 not access data falling outside the scope of the other items to be
12 seized (after the time for searching the device has expired) absent
13 further court order.
14       g. The government may also retain a digital device if the
15 government, prior to the end of the search period, obtains an order
16 from the Court authorizing retention of the device (or while an
17 application for such an order is pending), including in circumstances
18 where the government has not been able to fully search a device
19 because the device or files contained therein is/are encrypted.
20       h. After the completion of the search of the digital
21 devices, the government shall not access digital data falling outside
22 the scope of the items to be seized absent further order of the
23 Court.
24    6. The review of the electronic data obtained pursuant to this
25 warrant may be conducted by any government personnel assisting in the
26 investigation, who may include, in addition to law enforcement
27 officers and agents, attorneys for the government, attorney support
28 staff, and technical experts.  Pursuant to this warrant, the

7

investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

7. In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

a. Any digital device capable of being used to commit, further, or store evidence of the offense(s) listed above;

b. Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

c. Any magnetic, electronic, or optical storage device capable of storing digital data;

d. Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

e. Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

f. Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g. Any passwords, password files, biometric keys, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

8. During the execution of this search warrant, law enforcement is permitted to: (1) depress the thumbs and/or fingers of STANLEY ALEXANDER HUDSON onto the fingerprint sensor of the device (only when the device has such a sensor), and direct which specific

finger(s) and/or thumb(s) shall be depressed; and (2) hold the device in front of the face of that person with his eyes open to activate the facial-, iris-, or retina-recognition feature, in order to gain access to the contents of any such device. In depressing a person's thumb or finger onto a device and in holding a device in front of a person's face, law enforcement may not use excessive force, as defined in Graham v. Connor, 490 U.S. 386 (1989); specifically, law enforcement may use no more than objectively reasonable force in light of the facts and circumstances confronting them.

9. The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant, and do not apply to any other search of digital devices.